UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| ELLIOT BARDEN, JR., | ) |
| | ) |
| Plaintiff | ) |
| | ) |
| v. | )   1:24-cv-00264-NT |
| | ) |
| DOUG BLAUVELT, et al., | ) |
| | ) |
| Defendants | ) |

**SUPPLEMENTAL RECOMMENDED DECISION**

After a review of Plaintiff's complaint in accordance with 28 U.S.C. § 1915A, I determined that Plaintiff had not alleged an actionable claim and recommended the Court dismiss the matter unless within the time for the filing of objections to the recommended decision, Plaintiff amended the complaint to assert an actionable claim. (Recommended Decision, ECF No. 3.)

Plaintiff subsequently filed an amended complaint with attachments consisting of copies of grievances he lodged with prison officials. (Amended Complaint, ECF No. 5.) Because Federal Rule of Civil Procedure Rule 15(a)(1) permits a litigant to amend a pleading "once as a matter of course," subject to certain time limitations that do not apply here, the Court accepts the amended complaint for filing. The operative complaint now includes the allegations set forth in the original complaint and in the amended complaint, including the grievances Plaintiff included as attachments.

Following a review of the operative complaint, I recommend the Court dismiss the amended complaint.[1]

## FACTUAL ALLEGATIONS

Plaintiff alleges that he was wrongfully strip searched on seven occasions over the course of six months. With one exception, the searches occurred after court hearings, including videoconference hearings. According to the officer who responded to Plaintiff's grievance regarding the strip searches, jail officials conducted the searches because members of the public can access the court or court area of the jail, evidently creating a risk that contraband could be left in the area, recovered by an inmate, and then introduced to the jail environment. Plaintiff alleges he was never out of sight of an officer.

Plaintiff, who suffers from brittle bone disease and Lyme disease, also asserts that Defendant Coleman withheld prescribed medical items from Plaintiff. According to Plaintiff, the mattresses in the jail are worn and old and he had a doctor's note recommending that he sleep with an extra mattress and an extra blanket. During the twenty days when Plaintiff was in maximum security, Plaintiff was not allowed the second mattress in accordance with Defendant Coleman's directive.

According to Plaintiff, usually at 6:00 a.m. each day, an officer turned on the lights in the area around Plaintiff's cell and unlocked the doors. Plaintiff usually woke up and used the bathroom at that time, but on one occasion in or around July 2024, an officer turned on the lights at 6:00 but did not unlock the doors until 6:30. Plaintiff asked the

---

[1] Because I address in this Recommended Decision the allegations in Plaintiff's original complaint and in his amended complaint with attachments, I withdraw the previous Recommended Decision (ECF No. 3.)

officer why he did not unlock the doors until later, and the officer said he would consult with Defendant Coleman as to whether he was supposed to unlock the doors at 6:00 or 6:30. Plaintiff showed the officer the daily schedule, which provided that the lights would come on and the doors would be unlocked at 6:00. The officer told Plaintiff that he would make sure in the future to turn on the lights and open the doors at 6:00.

Later that day, Defendant Coleman searched Plaintiff's cell and removed a book and the extra blanket Plaintiff had been given. Defendant Coleman asserted that Plaintiff was not using the blanket properly. Plaintiff had been using the extra blanket as a leg pillow to elevate his knees, which Plaintiff asserts were swollen.

## LEGAL STANDARD

Plaintiff's operative complaint is subject to screening under the Prison Litigation Reform Act because Plaintiff filed the complaint while incarcerated and seeks redress from governmental entities and officers. *See* 28 U.S.C. § 1915A(a), (c). The § 1915A screening requires courts to "identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint (1) is frivolous, malicious, or fails to state a claim …; or (2) seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(b).

When considering whether a complaint states a claim for which relief may be granted, courts must assume the truth of all well-plead facts and give the plaintiff the benefit of all reasonable inferences therefrom. *Ocasio-Hernandez v. Fortuno-Burset*, 640 F.3d 1, 12 (1st Cir. 2011). A complaint fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its

face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "The relevant question . . . in assessing plausibility is not whether the complaint makes any particular factual allegations but, rather, whether 'the complaint warrant[s] dismissal because it failed in toto to render plaintiffs' entitlement to relief plausible.'" *Rodríguez–Reyes v. Molina–Rodríguez*, 711 F.3d 49, 55 (1st Cir. 2013) (quoting T*wombly*, 550 U.S. at 569 n. 14).

Although a pro se plaintiff's complaint is subject to "less stringent standards than formal pleadings drafted by lawyers," *Haines v. Kerner*, 404 U.S. 519, 520 (1972), the complaint may not consist entirely of "conclusory allegations that merely parrot the relevant legal standard." *Young v. Wells Fargo, N.A.,* 717 F.3d 224, 231 (1st Cir. 2013); s*ee also Ferranti v. Moran*, 618 F.2d 888, 890 (1st Cir. 1980) (explaining that the liberal standard applied to the pleadings of pro se plaintiffs "is not to say that pro se plaintiffs are not required to plead basic facts sufficient to state a claim").

## DISCUSSION

**A.   Strip Searches**

Plaintiff claims the strip searches he experienced violated his Fourth Amendment rights.  The Fourth Amendment protects "against unreasonable searches and seizures." U.S. Const. amend. IV.  "Although prisoners experience a reduction in many privileges and rights, a prisoner 'retains those [constitutional] rights that are not inconsistent with his status as a prisoner or with the legitimate penological objective of the corrections system,'" *Sanchez v. Pereira-Castillo*, 590 F.3d 31, 41 (1st Cir. 2009) (quoting *Turner v. Safley*, 482 U.S. 78, 95 (1987)), a category which includes the right to privacy regarding prisoners' persons or bodies.  *Cookish v. Powell*, 945 F.2d 441, 446 (1st Cir. 1991).  A court must

4

balance "the invasion of personal rights [a] search entails" against "the need for the particular search." *Bell v. Wolfish*, 441 U.S. 520, 559 (1979). "Courts must consider the scope of the particular intrusion, the manner in which it was conducted, the justification for initiating it, and the place in which it was conducted." *Id.*

Legal searches, including strip searches, have "no more intrusion than necessary to accomplish the proper law enforcement purpose." *U.S. v. Cofield*, 391 F.3d 334, 337 (1st Cir. 2004) (citing *Bell*, 441 U.S. at 559). Courts also weigh whether officials required an inmate to "assume humiliating poses, expose himself in an unnecessarily public place or to members of the opposite sex, remain exposed for unreasonable durations, or endure degradation or ridicule." *Id.* at 337. A strip search of an inmate as part of prison administration does not require probable cause or articulable suspicion, and it need only be conducted pursuant to a search policy that is "reasonably related to legitimate security interests." *Florence v. Bd. Of Chosen Freeholders of Cty. of Burlington*, 566 U.S. 318, 327-28 (2012) (upholding the programmatic, non-invasive strip-searching of "nonindictable offenders" housed in the general population, without reasonable suspicion).

Plaintiff did not provide much detail about the manner of and circumstances surrounding the strip searches he experienced. The grievance forms reflect that the jail conducted the searches because there was a possibility that outside individuals could have accessed the same space. Plaintiff apparently maintains that the presence of an officer within the space while he was there eliminated any need for a search. While the presence of an officer might reduce the security risk to some extent, it does not eliminate all legitimate security concerns. An individual accessing the space could leave an item for an

5

inmate in a way that is undetected by jail officials. In short, Plaintiff has not alleged facts that would support a plausible inference of an impermissible purpose, such as humiliation or intent to punish.[2]

### B.  Withholding Medical Items

The Eighth Amendment, which prohibits cruel and unusual punishments, governs prison conditions after conviction, and the Due Process Clause of the Fourteenth Amendment imposes similar obligations while prisoners are in pre-trial custody. *See City of Revere v. Massachusetts Gen. Hosp.*, 463 U.S. 239, 243 (1983). "Prison officials have a duty to provide humane conditions of confinement; prison officials must ensure that inmates receive adequate food, clothing, shelter, and medical care, and must take reasonable measures to guarantee the safety of the inmates." *Giroux v. Somerset Cnty.*, 178 F.3d 28, 31 (1st Cir. 1999) (citations and quotation marks omitted).

To establish constitutional liability, a plaintiff must satisfy both an objective standard, which requires the prisoner to be "incarcerated under conditions posing a substantial risk of serious harm," and a subjective standard, which requires the defendant to have acted, or failed to act, with "deliberate indifference to inmate health or safety." *Farmer v. Brennan*, 511 U.S. 825, 834, 836 (1994); *see also*, *Kosilek v. Spencer*, 774 F.3d 63, 82 (1st Cir. 2014) (en banc). A medical need is "serious" if it "has been diagnosed by a physician as mandating treatment, or . . . is so obvious that even a lay person would easily

---

[2] Plaintiff also alleges that he was searched on one occasion after some sort of recreation time. Because Plaintiff provides no information about the context or asserted justification for the search, the allegations do not support an actionable claim.

6

recognize the necessity for a doctor's attention." *Leavitt v. Correctional Medical Services, Inc.*, 645 F.3d 484, 497 (1st Cir. 2011) (quoting *Gaudreault v. Municipality of Salem*, 923 F.2d 203, 208 (1st Cir.1990)).  Deliberate indifference is akin to criminal recklessness, "requiring actual knowledge of impending harm, easily preventable." *Feeney v. Correctional Medical Services*, 464 F.3d 158, 162 (1st Cir. 2006) (quoting *Watson v. Caton*, 984 F.2d 537, 540 (1st Cir. 1993)).

Courts have generally been unwilling to find a constitutional violation even from absence of a primary mattress or blanket for a brief period. *See Jones v. Toombs*, 77 F.3d 482 (6th Cir. 1996) ("The defendants did not violate Jones's Eighth Amendment rights by depriving him of a mattress for a two week period"); *Alfred v. Bryant*, 378 F. App'x 977, 980 (11th Cir. 2010) ("Objectively speaking, sleeping on a steel bed without a mattress for eighteen days, though uncomfortable, is not so extreme as to violate contemporary standards of decency"); *Rascon v. Douglas*, 718 F. App'x 587, 592 (10th Cir. 2017) (finding no authority to support Eighth Amendment violation from having to sleep without a mattress for four nights).  The mere fact that Plaintiff was not provided with a second mattress and blanket, therefore, is insufficient to satisfy the objective standard.

In other circumstances, such as overcrowding, *see Lyons v. Powell*, 838 F.2d 28, 30 (1st Cir. 1988), or a medical condition that leads to a serious injury like bed sores, *see Pierce v. Cty. of Orange*, 526 F.3d 1190, 1224 (9th Cir. 2008), courts have scrutinized the adequacy of the provided bedding and, on occasion, found the objective prong to be satisfied.  The allegations here, however, do not rise to the level of a constitutional violation.  Plaintiff asserts that he has brittle bone disease, but he provides no information

about the severity of the condition and does not allege any injury beyond some level of discomfort or pain in muscles or joints for a relatively brief period.

Even if Plaintiff could satisfy the objective prong, Plaintiff's filings lack sufficient factual allegations to permit a plausible inference of a deliberately indifferent mental state of a jail official. Plaintiff does not allege that Defendant Coleman had any knowledge of his medical condition or that Plaintiff's condition was obvious. Indeed, even if Defendant Coleman knew that a doctor had recommended that Plaintiff have access to an extra blanket, Plaintiff does not allege the reason for the doctor's recommendation, and Plaintiff does not allege that Defendant Coleman had any knowledge of a medical need for the blanket. In sum, the operative complaint contains no facts from which a factfinder could reasonably infer that Defendant Coleman subjectively knew that Plaintiff had an objectively serious need for the blanket. Plaintiff thus has not alleged an actionable claim.

**C.     Retaliation**

In his grievances, Plaintiff wrote that he suspected that jail officials unlawfully deprived him of necessary items because he spoke to an officer about the delay between turning on the lights and unlocking the doors. "[A]s a general matter the First Amendment prohibits government officials from subjecting an individual to retaliatory actions" for engaging in activities covered by the First Amendment. *Hartman v. Moore*, 547 U.S. 250, 256 (2006). "To prevail on such a claim, a plaintiff must establish a causal connection between the government defendant's retaliatory animus and the plaintiff's subsequent injury." *Nieves v. Bartlett*, 139 S. Ct. 1715, 1722 (2019) (quotation omitted). A plaintiff must show: (1) that the plaintiff engaged in conduct protected by the First Amendment; (2)

8

that the defendant took adverse action against the plaintiff because of the protected conduct; and (3) that the adverse action was more than de minimis, i.e., was sufficient to deter a plaintiff of ordinary firmness from exercising his or her first amendment rights. *Hannon v. Beard*, 645 F.3d 45, 48 (1st Cir. 2011); *Davis v. Goord*, 320 F.3d 346, 352 (2d Cir. 2003); *Thaddeus-X v. Blatter*, 175 F.3d 378, 398 (6th Cir. 1999).[3]

Assuming, without finding, that Plaintiff could establish that he engaged in a protected activity based on his complaint to an officer about lights and doors combined with the filing of a prior grievance on another issue, a retaliation claim would fail because Plaintiff has not alleged facts that satisfy the other two elements of a retaliation claim. A fact finder could not reasonably determine that the adverse action Plaintiff cites—the removal of a loaned book and an extra blanket—were serious enough to deter a plaintiff of ordinary firmness. Even if Plaintiff could establish more than de minimis adverse action, the factual allegations are insufficient to support an inference of retaliatory animus. Plaintiff relies entirely on the timing of the removal of the items (approximately four and a half hours after he spoke with an officer about the lighting and the doors), but in this case, the timing at most "gets the complaint close to stating a claim, but without some further factual enhancement it stops short of the line between possibility and plausibility" regarding improper animus and causality. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007).

---

[3] The objective test about a plaintiff of ordinary firmness "applies even where a particular plaintiff was not himself subjectively deterred; that is, where he continued to file grievances and lawsuits." *Gill v. Pidlypchak*, 389 F.3d 379, 381 (2d Cir. 2004); *see also*, *Ayotte v. Barnhart*, 973 F. Supp. 2d 70, 82 (D. Me. 2013).

9

In support of a potential retaliation claim, Plaintiff also cites a strip search that allegedly occurred after Plaintiff returned to his cell following some kind of recreation time. Although courts have recognized that the intrusive and embarrassing character of strip searches can make them serious enough to constitute adverse action for purposes of a First Amendment retaliation claim, *see Ayotte v. Barnhart*, 973 F. Supp. 2d 70, 82 (D. Me. 2013), Plaintiff has not satisfied the other two elements of a retaliation claim. The first jail grievance included in the record referenced the search, but Plaintiff does not identify any protected First Amendment conduct that preceded the search. Plaintiff also alleges no facts from which a factfinder could reasonably infer improper animus or causality. Plaintiff provides no detail or context about the search, such as when the search occurred, who was involved in the search, or what happened between him and any of the officers prior to the search. The allegations regarding the strip search and retaliatory animus, therefore, "are too meager, vague, or conclusory to remove the possibility of relief from the realm of mere conjecture," and the claim is therefore properly dismissed. *S.E.C. v. Tambone*, 597 F.3d 436, 442 (1st Cir. 2010).

## CONCLUSION

For the reasons stated above, I recommend the Court dismiss Plaintiff's complaint, as amended.

## **NOTICE**

A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which de novo review by the district

court is sought, together with a supporting memorandum, within fourteen (14) days of being served with a copy thereof.

Failure to file a timely objection shall constitute a waiver of the right to de novo review by the district court and to appeal the district court's order.

/s/ John C. Nivison
U.S. Magistrate Judge

Dated this 19th day of November, 2024.